***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the additional evidence, consisting of affidavits and depositions of Charles D. Sherill and James Goodhew. Having reviewed the competent evidence of record, the Full Commission hereby modifies the Opinion and Award of the Deputy Commissioner.
 ***********
At the deputy commissioner hearing the parties tendered a Pretrial Agreement wherein they stipulated that:
1. The employee is Charles D. Sherrill and the employer is Carolina Cable Contractors, Inc.
2. At all relevant times, the employer was insured.
3. The carrier is Clarendon National Insurance Companies.
4. The defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
5. An employer-employee relationship existed between the employer and the employee on or about April 21, 1997, the stipulated date of injury.
6. The plaintiff's average weekly wage is $840.00, and his compensation rate is $512.00 per week.
7. The plaintiff-employee has not worked with Carolina Cable Contractors, Inc. since approximately March 15, 1998.
8. The issues to be determined by the Commission are whether the plaintiff has undergone a substantial change of condition pursuant to North Carolina General Statute § 97-47, and if so, what are the compensable consequences.
 *********** ADDITIONAL EVIDENCE
Plaintiff filed a Motion to Take Additional Evidence and asked the Full Commission to admit the Affidavit of Charles D. Sherill and Affidavit of James Goodhew. Defendants requested to cross-examine these witnesses and their depositions were subsequently tendered. The Full Commission therefore grants plaintiff's motion and accepts the affidavits and depositions of Charles D. Sherill and James Goodhew as evidence in this action. See Cummings v. BCCI Const. Enterprises, 149 N.C. App. 180,560 S.E.2d 369 (2002); Groff v. Foster Forbes Glass, 140 N.C. App. 130,535 S.E.2d 602 (2000).
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. The plaintiff was born September 5, 1941, and he was 59 years of age at the time of the deputy commissioner hearing. He is a high school graduate, and he worked much of his life as a meat cutter.
2. After plaintiff lost his job as a meat cutter, he has worked in the telephone business.
3. On April 21, 1997, plaintiff sustained an injury by accident when he fell off a ladder some 10 to 20 feet high and landed on the ground, sustaining injuries to his head, neck and low back. He was treated and held over night at Ridgecrest Hospital in Clayton, Georgia, and then he came under the care of Dr. Judson Handley. Prior to his injury by accident on April 21, 1997, plaintiff had never had any significant injury to or trouble with his back.
4. Dr. Handley diagnosed plaintiff as having a compression fracture at L1, and he treated plaintiff conservatively until December 10, 1997, when he rated plaintiff as having a 10% impairment of the spine, and he released him to return to work with restrictions as set forth in a functional capacity evaluation dated November 20, 1997. These restrictions included no static sitting or standing for more than two hours, no heavy lifting and no long distance driving.
5. At the time Dr. Handley released plaintiff, his back was doing well, and he was not required to take any pain medication for pain relief.
6. On or about January 19, 1998, plaintiff returned to work with Coleman Cable, but contrary to the restrictions issued by Dr. Handley, plaintiff was required by the defendant-employer to drive to work in Commerce, Georgia, from his home in Franklin, North Carolina, a distance of approximately 85 miles in each direction.
7. On or about March 15, 1998, plaintiff was able to obtain another job in the telephone industry with Nichols Construction Company where he was able to work closer to home, did not have to drive long distances, and where he also made as much or more than he was earning with the defendant-employer.
8. On or about September 23, 1998, plaintiff received his last indemnity check from the defendant compensating him for the 10% permanent partial impairment to his spine. Both on the date he was rated and released by Dr. Handley, December 12, 1997, and when he finally received payment for his permanent impairment on or about September 23, 1998, plaintiff was able to return to his pre-injury work as a telephone lineman, and he was essentially pain free.
9. The plaintiff continued to do well generally until approximately May 1, 1999, when his back pain became significantly worse. Following the change in his level of back pain that occurred on or around May 1, 1999, the plaintiff's back condition has continued to deteriorate. He has been back to see Dr. Judson Handley who has placed him on a number of different medications, including Motrin, Vioxx and Darvocet for pain relief.
10. The plaintiff's sleeping habits have deteriorated, and he now has to get up at night due to increased low back pain.
11. The plaintiff has been an avid fisherman, but because of the increase of his low back pain, he is unable to enjoy fishing, and he has now sold his bass boat.
12. Following his injury by accident on April 21, 1997, plaintiff was walking two miles a day after work to enhance his back condition. However, since his back condition worsened, he has found that walking, instead of helping his back, either aggravates or does not help his back condition.
13. The plaintiff has not had a new injury or trauma to his back since the incident of April 21, 1997.
14. As a result of his worsened back condition, plaintiff missed two weeks from work, in August of 1999 and two weeks from work again in May of 2000. On both occasions, plaintiff was not paid by his current employer, and he has not received any workers' compensation benefits for those periods of time.
15. In addition to the problems with his low back, plaintiff has experienced a recurrence of neck pain and difficulty. Dr. Judson Handley has opined that plaintiff has a pinched nerve that is causing some radiating pain into his right arm.
16. Prior to the injury by accident on April 21, 1997, plaintiff was diagnosed with diabetes. He has been taking oral medication since before the injury by accident, and his diabetes is generally controlled through diet and the oral medication. In addition, plaintiff has had episodes of gout in his big toe and left ankle, but that is well managed by medication.
17. On or about May 11, 2000, after attempting for almost a year to alleviate the deterioration of plaintiff's back condition, Dr. Judson Handley increased plaintiff's restrictions and recommended "permanent restrictions for no heavy lifting, and avoid repetitive bending due to back injury and degenerative disc disease."
18. On or about March 1, 2000, plaintiff started doing verification work with Nichols Construction. Plaintiff was performing this work at the time of the deputy commissioner hearing. At the time of the hearing, the new employer temporarily had been able to accommodate the new restrictions placed on plaintiff by his doctor. On August 25, 2000, plaintiff's work with Nichols Construction ended. Plaintiff collected unemployment benefits after he was laid off from Nichols Construction.
19. On September 19, 2000, at the request of the defendants, plaintiff underwent an independent medical evaluation by Dr. Todd B. Guthrie of Park Ridge Orthopedics in Fletcher, North Carolina. After examining and evaluating plaintiff and reviewing his medical history, Dr. Guthrie noted: "It is my opinion within a reasonable degree of medical certainty that Mr. Sherrill's condition is substantially changed since Jan. of 1998 [Dr. Handley found him to be at MMI and rated and released him on 12-10-97] If the pts. pain increases, he may need a limited fusion to relieve his pain. With activity and work modification, I think this will be unlikely."
20. On January 18, 2001, plaintiff went to work for James Goodhew. Plaintiff worked as a guide and as an installer for one of Mr. Goodhew's crew that installed telephone drop lines, or cut-overs. Plaintiff was hired by Mr. Goodhew because he was more familiar with the roads in the western part of the state than his other employees. Plaintiff did not perform the digging and other heavy duties generally performed in this line of work. Plaintiff worked 5 hours per day and was paid $20.00 per cut-over. Plaintiff worked for Mr. Goodhew until October 19, 2001, and made $4150.00 for his labor, for an average of $105.64 per week. Plaintiff was laid off because Mr. Goodhew did not have enough work. Telephone installation work is generally seasonal and this work often slows down in the fall. In January 2002, plaintiff attempted to return to work for Mr. Goodhew; however, his new crew member needed plaintiff to perform heavier work and plaintiff was not able to continue because of his back injury. The Full Commission finds that because of plaintiff's back condition he would not be able to find employment in the telephone installation business in a competitive market and was temporarily employed by Mr. Goodhew in a lighter duty position because Mr. Goodhew needed someone to show his crews where addresses were located.
21. By August 5, 1999, and certainly by May 22, 2000, plaintiff sustained a substantial change in his physical condition which effected capacity to earn wages starting on August 25, 2000 when he was laid off from his work with Nichols Construction. His low back pain had increased significantly. He had degenerative disc disease at the location of his compression fracture at L1 that had not been noted previously. He had spurring of his spine that had not been present previously. He had to take pain medications including Darvocet that he was not taking at the time of his final award on or about September 23, 1998. As a result of his increased low back pain, plaintiff's sleep had become significantly disturbed. Dr. Handley changed his restriction from "avoiding heavy lifting" to "no heavy lifting." As a result of this substantial change of condition, plaintiff was placed in a temporary light duty job with Nichols Construction which reflects a substantial change in his physical ability to earn wages. Plaintiff was subsequently laid off by Nichols Construction and was temporarily employed in a part-time, light duty position with John Goodhew.
22. The Full Commission is not convinced that plaintiff had a change in his condition based on his loss of work because of his occasional flare-up of back pain that caused him to lose approximately two weeks of work in August 1999 and in May 2000. The Full Commission notes that Dr. Handley anticipated that plaintiff would have occasional flare-ups of low back pain and would miss some days of work or would have to work lighter duty because of his back injury. Rather, the Full Commission finds that plaintiff has sustained a substantial change in his condition based on opinion of Dr. Guthrie, defendant's IME doctor, who reported that plaintiff was having increased pain, progression of radicular pain into the lower extremity, progression of degenerative disc disease at the location of his injury, and the administration of additional medications for treatment of his symptoms, coupled together with his difficulty in performing his former employment.
 ***********
Based on the foregoing Stipulations and Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a substantial change of condition in his wage earning capacity on or about August 25, 2000, when he experienced a deterioration of his back condition resulting in increased back pain and a reduction of his physical capacity to earn wages. N.C.G.S. § 97-47;Lucas vs. Bunn Manufacturing Co., 90 N.C. App. 401, 368 S.E.2d 386
(1988).
2. As a result of his substantial change of condition, plaintiff experienced total disability for the period from August 26, 2000, through January 17, 2001. Plaintiff is entitled to receive weekly indemnity benefits at the rate of $512.00 per week during this period, subject to a credit for unemployment benefits received during this same period. N.C.G.S. §§ 97-29, 97-42.1.
3. As a result of his substantial change of condition, plaintiff experienced temporary partial disability for the period from January 18, 2001 through October 19, 2001, during which time plaintiff had a $734.36 loss in weekly earnings for which he is entitled to payment of $489.57 in weekly benefits for his partial disability. N.C.G.S. § 97-30.
4. As a result of his substantial change of condition, plaintiff has been totally disabled since October 19, 2001, and is entitled to weekly benefits at the rate of $512.00 until he returns to work or until further order of the Commission. N.C.G.S. § 97-29.
5. Plaintiff is entitled to received reasonable and necessary medical care for his compensable back injury, including treatment by or at the direction of Dr. Handley. N.C.G.S. §§ 97-2(19), 97-25,97-25.1.
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability for the period from August 26, 2000, through January 17, 2001, at the rate of $512.00 per week, subject to a credit for unemployment benefits received during this same period. These benefits have accrued and shall be paid in a lump sum, subject to attorney's fees awarded below.
2. Defendants shall pay plaintiff temporary partial disability for the period from January 18, 2001, through October 19, 2001, during which time plaintiff had a $734.36 loss in weekly earnings for which he is entitled to payment of $489.57 in weekly benefits for his partial disability. These benefits have accrued and shall be paid in a lump sum, subject to attorney's fees awarded below.
3. Defendant shall pay plaintiff total disability benefits at the rate of $512.00 per week from October 19, 2001, and continuing until plaintiff returns to work or until further order of the Commission. The portion of this Award which has accrued shall be paid in a lump sum, subject to attorney's fees awarded below. Continuing benefits shall be paid weekly.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident of April 21, 1997, and his substantial change of condition, including those expenses plaintiff paid out-of-pocket, when receipts for same have been submitted and approved by the Commission.
5. A reasonable attorney's fee in the amount of 25% of the compensation benefits due plaintiff, as Awarded in Paragraphs 1, 2, and 3 above, is hereby approved for plaintiff's counsel. For accrued benefits said amount shall be deducted from the amount due plaintiff and shall be paid directly to plaintiff's counsel. For continuing benefits, every fourth check shall be paid to plaintiff's counsel.
6. Defendants shall pay the costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER